James H. Power
Warren E. Gluck
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York  10007-3189
Tel.:    (212) 513-3200
Fax:    (212) 385-9010
E-mail:  james.power@hklaw.com
            warren.gluck@hklaw.com

Attorneys for Plaintiff,
*Empresa de Navegacion Maruba S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMPRESA DE NAVEGACION MARUBA S.A.

                              Plaintiff,

              - against -

EVERGREEN MARINE (UK) LIMITED

                              Defendant.

09 CV _____ (___)

**VERIFIED**
**COMPLAINT**

Plaintiff, Empresa de Navegacion Maruba S.A. ("Maruba"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against Evergreen Marine (UK) Limited ("Evergreen"), alleges as follows:

1.      This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

1

2.    At all times material herein, plaintiff Maruba was and is a business entity organized and existing under the laws of a foreign nation and maintains a place of business at Emma de la Barra 353, 3rd Floor, Buenos Aires, Argentina.

3.    Upon information and belief, at all times material herein, defendant Evergreen is and was a business entity organized and existing under the laws of a foreign nation with a place of business at 160 Euston Road, London, NW 1 2 DX, United Kingdom.

4.    Upon information and belief, at all times material herein, non-party China Shipping Container Lines Co. Ltd is and was a foreign business entity organized and existing under the laws of a foreign nation with a place of business at Room A, B, C, D, Floor 27, No 450 Fu Shan Road, Pu Dong New Area, Shanghai, China; and non-party China Shipping Container Lines (Hong Kong) Co. Ltd. is and was a foreign business entity organized and existing under the laws of a foreign nation with a place of business at 69/F, The Center, 99 Queen's Road Central, Hong Kong, China (these two entities are referred to collectively herein as "CSCL").

5.    Upon information and belief, at all times material herein, non-party Kawasaki Kisen Kaisha, Ltd. ("K-Line") is and was a foreign business entity organized and existing under the laws of a foreign nation with a place of business at Hibiya Central Bldg., 2-9, Nishi-Shinbashi 1-Chrome, Minato-Ku, Tokyo, Japan, 105-8421.

**Maruba's Claim Against Evergreen**

6.    On or about May, 2008, Maruba, Evergreen, CSCL and K-Line entered into a Slot Charter agreement whereby Maruba, as owner or disponent owner, agreed to charter space for a North Europe-East Coast of South America service (the "Service") to defendant Evergreen, non-party CSCL (two entities which entered the agreement jointly as a single party) and non-party K-

2

Line as slot-charterers (the "Slot Charter Agreement"). A true and correct copy of the first page of the Slot Charter Agreement is attached hereto as Exhibit 1.[1]

7.     The Slot Charter Agreement expressly referenced the terms of a separate vessel sharing agreement between Maruba and various South American vessel owners (the "Vessel Sharing Agreement" or "CSAV Agreement" or the "VSA"). Attached hereto as Exhibit 2 is a true and correct copy of the first page of the VSA.[2] The Preamble to the Slot Charter Agreement expressly provides that where there is any contradiction of terms between the Slot Charter Agreement and the VSA, the VSA terms shall prevail.

8.     Pursuant to the terms of the VSA and the Slot Charter Agreement, the vessel(s) to be utilized in the Slot Charter Agreement would be operated by Maruba or alternatively, one of the parties to the VSA. However, with respect to scheduling and other operational matters relating to the Service and Slot Charter Agreement, paragraph 8 of the Slot Charter Agreement designates Maruba as the sole point of contact with the VSA parties vis-à-vis among the Slot Charter Agreement parties.

9.     The preamble of the Slot Charter Agreement further provides that Maruba was to represent the parties to the Slot Charter Agreement with regard to the VSA and the parties to the VSA.

---

[1] Only the first page of the Slot Charter Agreement is attached as an Exhibit because the Slot Charter Agreement, its terms, provisions, rates and routes are highly confidential and constitute proprietary and/or commercially sensitive information. Upon request, the Slot Charter Agreement will be produced to the Court for *in camera* review.

Various clauses of the Slot Charter Agreement are referenced in this Verified Complaint as necessary to state Maruba's claim. To the maximum extent possible, Maruba has endeavored to protect the confidential agreements, rates and negotiations of the non-parties to this action.

[2] The terms of the VSA are similarly confidential and upon request, the VSA and its two addenda will be produced to the Court for *in camera* review.

10.     With respect to the vessel to be operated by Maruba (as opposed to the other VSA parties), the Slot Charter Agreement specifically references the vessel *MARUBA MAXIMA* as the "fixed vessel" for the purposes of the Slot Charter Agreement and is silent on the issue of vessel substitution. However, clause 6.4 of the VSA, whose terms control, expressly permits the substitution of the vessel.

11.     Paragraph 4.4 of the Slot Charter Agreement consists of a table of slot allocations between the slot charterers. Defendant Evergreen's slot-share for each vessel operated is 30%, and the table further describes the number of slots for each vessel and route. Paragraph 4.9 sets out a similar table with respect to refrigerated containers on an identical percentage basis. Pursuant to the terms of the Slot Charter Agreement, Evergreen (as well as the other parties to it) were obligated to make payment for its allocated slots whether or not used.

12.     Paragraph 11 of the Slot Charter Agreement governs the cost-sharing provisions for the Service and states in pertinent part: "… each slot charterer shall be responsible for all costs associated with operating Maruba's vessel, including but not restricted to charter hire, bunker, port costs, drydocking and repairs costs, insurance costs."

13.     The Slot Charter Agreement was never signed, but was implemented and went into effect on May 7, 2008, when the VSA vessel *LIBRA IPANEMA* was deployed into service. From May 7, 2008 through approximately November, 2008, all parties to the Slot Charter Agreement operated pursuant to its terms.

14.     Paragraph 13 of the Slot Charter Agreement governs duration and termination and provides in pertinent part as follows:

13.1 "In conformity with the European regulations 611/2005 dated 20 April 2005; this agreement shall be valid for a minimum period of 24 months as from the date

4

at the first port of loading in North Europe and the first vessel deployed in the service m/v LIBRA IPANEMA 8118SB or substitute schedule to depart on 7 May 2008, (the "Commencement Date")."

(a) "Any party to this agreement may withdraw with a prior notice of 6 months to the other parties. Any such notice shall not be served prior to the end of the 18th month from Commencement Date."

(b) "by written notice with immediate effect for default by one of the parties which remain uncured through a period of 30 days after written notice thereof has been received by the defaulting party or;

(c) By unanimous agreement of the parties.

(d) By termination of the parties.

15.    The Slot Charter Agreement was therefore binding on all parties to it until at least May 7, 2010.

16.    Beginning on or about October 28 of 2008, Maruba and Evergreen agreed through (lengthy) series of emails concluding November 6, 2008, to Evergreen's temporary withdrawal from the Slot Charter Agreement for the period of November, 2008 through March, 2009, in exchange for Evergreen's commitment to use additional slots in an another slot charter agreement for a different service. CSCL and K-Line accepted this modification.[3]

17.    Specifically, on October 28, 2008 Maruba made a number of proposals to accommodate Evergreen, which relevant alternative is as follows:

> [Alternative] "(a) Maruba takes the 132 TEUs of Evergreen on the CSAV [this] loop and Evergreen takes the 168 TEUs on the MSC service [the other slot charter] until April next year when the CSAV loop starts the upgrading process. Thereafter Evergreen takes again its participation on the CSAV Service in accordance with its share and Maruba does the same on MSC Service."

---

[3] Once again, for the protection of the parties' commercial interests, Plaintiff will submit the entire set of email correspondence, which contain sensitive business information including routes and rates, upon request for *in camera* review.

18.     On November 4, 2008, Evergreen responded that "[b]asically we are now studying your alternative (a) quoted hereunder and will revert with our final decision within these days."

19.     On November 6, 2008 Evergreen sent an email to Maruba accepting alternative (a), which email provides as follows:

> "Herewith our confirmation in alternative (a) and propose ceased participation from the EUSA1 (CSAV system) w.e.f. [with effect from] following vessel/voyage:
>
> Southbound LIBRA IPANEMA 8148S eta Rotterdam 2008 1205
>
> Northbound: LIBRA COPACABANA 8146N eta Paranagua 2008 1209
>
> In the meantime, Evergreen will increase slots allocation in MSC system [further providing details as to container types and voyages] Please Confirm.

20.     Maruba replied with its agreement on November 10, 2008, in two emails, copying K-Line and CSCL, providing further logistical details with respect to Evergreen's "temporal [sic] withdrawal." On November 11, 2009, Evergreen then replied to all of the parties via email "Your message is duly noted. Evergreen in agreement and confirm proposed vessel/voyage withdrawal from CSAV loop [stating logistical details]."

21.     On March 26, 2009 Maruba informed Evergreen in writing that the time in which Evergreen was required to re-enter the Slot Charter Agreement was approaching.

22.     Despite its obligation to do so, Evergreen has failed re-enter and meet is obligations with respect to the Slot Charter Agreement from April, 2009, onwards. Maruba has made numerous requests via email for Evergreen to nominate cargo and load ports and/or make payment on its slot commitments but Evergreen has refused to do so.

23.     In accordance with the Slot Charter Agreement, Maruba issued invoice #196822467 in the amount of $210,067.50, due April 8, 2009, and invoice #196865027 in the

amount of $624,531.25, due May 7, 2009, to Evergreen. These sums represent Evergreen's agreed slot commitments and its pro-rata portion of the Maruba vessel operating costs pursuant to paragraphs 4 and 11 of the Slot Charter Agreement.

24.    Evergreen has failed to pay these invoices, which are due, owing and payable. Evergreen's failure to pay these invoices constitutes a breach of the Slot Charter Agreement by Evergreen.

25.    On August 13, 2009, Maruba issued a letter formally demanding payment on invoice #196822467 and #196865027. The letter states that if Evergreen made prompt payment on these invoices, and if adequate assurance was provided that future invoices would be paid by Evergreen, then Maruba would forego legal action and waive interest on the two overdue invoices. Otherwise, it would commence arbitration and seek security for its claims. A true and correct copy of Maruba's August 13, 2009 letter is attached hereto as Exhibit 3.

26.    Evergreen responded to Maruba's August 13 letter by stating that it does not consider itself bound by the Slot Charter Agreement because of Maruba's alleged unilateral conduct. Specifically, it baselessly contends Maruba breached the Slot Charter Agreement by substituting the (more economical) vessel MARUBA CRISTINA for the MARUBA MAXIMA. However, clause 6.4 of the VSA expressly permits such substitution. Evergreen has thus repudiated the Slot Charter Agreement because it has indicated that it no longer considers itself bound by its terms.

27.    The Slot Charter Agreement was to be in effect until at least May 7, 2010. Evergreen's early repudiation of the Slot Charter Agreement constitutes a breach of the Slot Charter Agreement. As a result of Evergreen's breaches of the Slot Charter Agreement, Maruba has incurred the following actual and (estimated) damages:

| Invoice # | Service | Slot Charter Agreement Invoice Number | Amount | Due Date |
|---|---|---|---|---|
| 196822467 | EUSA 1 | 9th Invoice | $210,067.50 | 4/8/2009 |
| 196865027 | EUSA 1 | 10th Invoice | $624,531.25 | 5/7/2009 |
| N/A | EUSA 1 | 11th Invoice | $639,245.82 | 7/7/2009 |
| N/A | EUSA 1 | 12th Invoice | ($792,337.14) | 8/25/2009 |
| N/A | EUSA 1 | 13th Invoice | ($792,337.14) | 10/13/2009 |
| N/A | EUSA 1 | 14th Invoice | ($792,337.14) | 12/1/2009 |
| N/A | EUSA 1 | 15th Invoice | ($792,337.14) | 1/19/2010 |
| N/A | EUSA 1 | 16th Invoice | ($792,337.14) | 3/9/2010 |
| N/A | EUSA 1 | 17th Invoice | ($565,955.10) | 4/27/2010 |
| **TOTAL** | | | **$6,001,485.37** | |

28.    Therefore, proximate to Evergreen's breach of the Slot Charter Agreement, Maruba principal damages, as best as can be presently be estimated, are $6,001,485.37. Maruba is mindful of its obligation to take all reasonable steps to mitigate its damages through May 7, 2010. Maruba is presently in the process of attempting to mitigate its damages, but due to the sharp downturn in the shipping market, it has not yet been successful. In the event that Maruba is able to mitigate its damages, it will promptly inform the Court and reduce its claim accordingly.

29.    Paragraph 15 of the Slot Charter Agreement provides for London Arbitration before the London maritime Arbitrators Association under English Law.

30.    While all disputes arising out of Slot Charter are to be arbitrated in London, and Empresa de Navegacion Maruba S.A. intends to commence arbitration proceedings against Evergreen Marine (UK) Limited in London, the action herein is submitted in accordance with Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure as well as 9 U.S.C. §8, and thus this action is not and cannot be considered a waiver of the Slot Charter 's arbitration clause.

31.    Under English law, arbitration awards and legal verdicts regularly include reasonable interest and costs, including a reasonable allowance for attorneys' fees.

32.    Attorneys' fees and arbitration costs in this matter are estimated to be $150,000.

33.    It is estimated that it will take approximately three years to resolve this matter in London arbitration. Under relevant English law and arbitration procedure, a reasonable interest rate is 3.25% compounded quarterly, resulting in the following estimated interest and attorneys' fees in addition to Maruba's principal claim:

| | | |
|---|---|---|
| Interest (3.25% on $6,001,485.37 for three years compounded quarterly): | $ | 612,014.79 |
| Attorneys' fees and costs: | $ | 150,000.00 |
| Principal Claim: | $ | 6,001,485.37 |
| **Total Sought:** | **$** | **6,763,500.16** |

34.    It is common practice in the maritime industry to require that payments be made in U.S. Dollars and payments are made in U.S. Dollars in conformance with these requirements.

9

The Slot Charter Agreement required payments to be made in U.S. Dollars and Evergreen has made payments in U.S. Dollars to Maruba in accordance with the Slot Charter Agreement in the past. Evergreen is also party to other agreements that require payment in U.S. Dollars

35.    International electronic fund transfers in U.S. Dollars pass through intermediary banks in New York and upon information and belief, Evergreen must utilize New York intermediary banks to effectuate payments and receipts on its international shipping transactions.

## REQUEST FOR ATTACHMENT

36.    Evergreen Marine (UK) Limited is not found within the Southern District of New York but does transact business in U.S. Dollars as evidenced by the Slot Charter Agreement at issue here.  Hence, Evergreen does have, or will have during the pendency of this proceeding, assets, goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which are being transferred for its benefit, within the jurisdiction at the following financial institutions:   ABN Amro Bank; American Express Bank; Banco Popular; Bank of America, N.A.; Bank of China; Bank Leumi USA; The Bank of New York; Bank of Tokyo-Mitsubishi UFJ Ltd.; BNP Paribas; Calyon Investment Bank; Citibank, N.A.; Commerzbank; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Standard Chartered Bank; Société Générale; UBS AG; Wachovia Bank, N.A.; or any other financial institution within the Southern District of New York.

**WHEREFORE**, plaintiff Empresa de Navegacion Maruba S.A. prays:

1.     That a summons with process of attachment and garnishment may issue against the defendant  Evergreen Marine (UK) Limited in the amount of $6,763,500.16 (including estimated interest, attorneys' fees and costs), and if defendant  Evergreen Marine (UK) Limited cannot be found, then that its goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, credits, wire transfers, accounts, letters of credit, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or other tangible or intangible property which belongs to it, is claimed by it, is being held for it or on its behalf, or which is being transferred for its benefit, within the district may be attached in an amount sufficient to answer Maruba's claim;

2.     That defendant  Evergreen Marine (UK) Limited, and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.     That this court recognize and confirm any judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

4.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

5.     That judgment be entered in favor of Empresa de Navegacion Maruba S.A. and against  Evergreen Marine (UK) Limited in the amount of $6,763,500.16 (including estimated interest, attorneys' fees and costs); and,

6.    That this Court grant Empresa de Navegacion Maruba S.A. such other and further relief which it may deem just and proper.

Dated: New York, New York
       August 26, 2009

                              HOLLAND & KNIGHT LLP

              By:    _____
                              James H. Power
                              Warren E. Gluck
                              HOLLAND & KNIGHT LLP
                              195 Broadway
                              New York, New York  10007-3189
                              Tel.:    (212) 513-3200
                              Fax:    (212) 385-9010
                              E-mail:  james.power@hklaw.com
                                       warren.gluck@hklaw.com

                              Attorneys for Plaintiff
                              *Empresa de Navegacion Maruba S.A.*

                                    12

## VERIFICATION

STATE OF NEW YORK            )
                             :ss.:
COUNTY OF NEW YORK           )

Warren E. Gluck, being duly sworn, deposes and says:

I am associated with the firm of Holland & Knight LLP, counsel for Empresa de Navegacion Maruba S.A. ("Maruba"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Maruba's representative and corresponded with Maruba's representatives regarding this matter. I am authorized by Maruba to make this verification, and the reason for my making it as opposed to an officer or director of Maruba is that there are none within the jurisdiction of this Honorable Court.

_____
                    Warren E. Gluck

Sworn to before me this
26th day of August, 2009

_____
Notary Public

# 8792480_v1

DIALYZ E. MORALES
Notary Public, State Of New York
No. 01MO6059215
Qualified In New York County
Commission Expires June 25, 200 _11_

# EXHIBIT 1

# SLOT CHARTER AGREEMENT

# NORTH EUROPE – EAST COAST SOUTH AMERICA

### BETWEEN

## CSCL Co., Ltd. / CSCL (Hong Kong) Co., Ltd.



And

## Evergreen Marine (UK) Limited



And

## Kawasaki Kisen Kaisha, Ltd.



And

## Empresa de Navegación Maruba S.A

**MARUBA**
www.maruba.com.ar

# TABLE OF CONTENTS

PREAMBLE ............................................................................................................... 3
DEFINITIONS .......................................................................................................... 3
1      PARTIES ...................................................................................................... 5
2      GEOGRAPHICAL SCOPE ........................................................................ 6
3      SERVICE PATTERN .................................................................................. 6
4      SLOT ALLOCATION ................................................................................. 7
5      USAGE OF SLOTS ................................................................................... 10
6      VESSEL SCHEDULING ........................................................................... 11
7      VESSEL OPERATIONS ........................................................................... 11
8      SINGLE POINT OF CONTACT ............................................................... 17
9      SETTLEMENTS ........................................................................................ 18
10    FINANCIAL PROCEDURE ....................................................................... 18
11    SHARING COSTS OF THE SERVICE .................................................... 19
12    TERMINALS ............................................................................................. 19
13    DURATION AND TERMINATION ............................................................. 20
14    CONFORMITY WITH REGULATIONS AND SECURITY ISSUES ........... 22
15    APPLICABLE LAW AND ARBITRATION ................................................. 22
16    NOTICES .................................................................................................. 23
17    SEPARATE MARKETING ........................................................................ 24
18    NON ASSIGNMENT ................................................................................. 24
19    AMENDMENT and EMBOIDIMENT ......................................................... 24
20    SIGNATURE ............................................................................................. 25
**APPENDIX I: NORTH EUROPE-EAST COAST SOUTH AMERICA PROFORMA SCHEDULE** ........... 26
**APPENDIX II: AGREED TERMINALS** ............................................................. 27
**APPENDIX III: SLOT COST BASIC STRUCTURE** ........................................ 28
**APPENDIX III: PRINCIPALS CARRER'S UNDERTAKING AND LIABILITIES** .................................... 30

# EXHIBIT 2

Appendix 1

# Vessel Share Agreement
## in respect of the trade between
## Northern Europe and the East Coast of South America

Compañía Sud Americana de Vapores S.A. (CSAV)

Compañia Libra de Navegacao (LBR)

Compañía Libra de Navegación Uruguar (LBRU)

And

Empresa de Navegacion Maruba S.A. (MARUBA)

Appendix 1

Contents

Clauses

1   **Definitions** ................................................................................ 3
2   **Commencement and duration** ................................................ 6
3   **Geographical Scope** ............................................................... 7
4   **Master Schedule and Port Rotation** ...................................... 8
5   **Slot Entitlement** ..................................................................... 8
6   **Provision of Vessels** .............................................................. 9
7   **Allocation of Slots on individual Vessels** ........................... 10
8   **Use of Slots** .......................................................................... 11
9   **Containers** ............................................................................ 12
10  **Breakbulk, Oversized and Dangerous Cargo** ...................... 13
11  **Management of the Agreement** ........................................... 13
12  **Financial arrangements** ....................................................... 14
13  **Performance/Non-Performance** .......................................... 14
14  **Liability** ............................................................................... 14
15  **Conference membership** ...................................................... 15
16  **Other Lines to the Agreement** ............................................ 15
17  **Terminals** ............................................................................. 15
18  **Confidentiality** .................................................................... 16
19  **Notices** ................................................................................ 16
20  **Non-waiver of rights** ........................................................... 16
21  **Language** ............................................................................. 16
22  **Enforceability** ..................................................................... 16
23  **Interpretation** ...................................................................... 17
24  **Disclaimer of Partnership** ................................................... 17
25  **Assignment** ......................................................................... 17
26  **Law and Arbitration** ........................................................... 17

Appendices

| 1  | Pro-forma schedule                                     |  |
|----|--------------------------------------------------------|--|
| 2  | Vessel Characteristics and Vessels Employed            |  |
| 3A | Slot Charter party                                     |  |
| 3B | Co-Charterer's Undertakings                            |  |
| 4  | Financial Arrangements                                 |  |
| 5  | Slot Entitlements of the Lines on Individual sailings  |  |
| 6  | Non-Performance                                        |  |
| 7  | Example for Clause 7.8                                  |  |
| 8  | Slot cost calculation                                  |  |



# EXHIBIT 3

 **MARUBA**
www.maruba.com.ar

Emma de la Barra 353 - 3º Piso - Edificio Catanos Norte
C1107BXA Buenos Aires - Argentina

Evergreen Marine (UK) Limited
160 Euston Road
London NW1 2DX
United Kingdom

Attention: Mr SHEU Dong-Han (Eric Scheu)
By email: ericsheu@uk.evergreen-line.com and by post

Our Ref    Marcelo Sibione                                    13 August 2009

Dear Sirs.

**Maruba – v – Evergreen – Slot Charterer Agreement May 2008**

We refer to various communications concerning the above Slot Charter Agreement entered
into in May 2008 between Empresa De Navegacion Maruba SA ("Maruba") and Evergreen
Marine (UK) Limited ("Evergreen"), CSCL Co. Limited/CSCL (Hong Kong) Co. Limited
("CSCL") and Kawasaki Kisen Kaisha Limited ("K Line"), together referred to hereafter as
"the Lines".

In the Slot Charter Agreement it was agreed that Maruba would represent CSCL, K Line and
Evergreen, and the Agreement was made specifically pursuant to a Vessel Sharing
Agreement signed on 30 April 2008 between LIBRA/CSAV and Maruba. The Slot Charter
Agreement was agreed to commence when the vessel M/V LIBRA IPANEMA was deployed
into the EUSA service. That Vessel was deployed into the service on 7 May 2008, and that
became the Commencement Date under the Agreement. The Agreement was agreed to be
valid for a minimum of 24 months from 7 May 2008, and then to continue in full force and



Tel.: (+54-11) 4320-3600 (Líneas Rotativas) - Fax: 4320-3795/3798/3799 - Web site: www.maruba.com.ar


Emma de la Barra 353 - 3° Piso - Edificio Colonos Norte
C1107BXA Buenos Aires - Argentina

effect up to and including 7 May 2010 unless and until a party terminates the Agreement. No party has to date terminated the Agreement.

Following our meeting between the Lines in Buenos Aires in October 2008. and after subsequent correspondence between yourselves, ourselves and the other Lines, it was agreed between the Lines that Evergreen could withdraw from the Slot Charter Agreement temporarily from November / December 2008 up to April 2009, and in the intervening period (November / December 2008 to March / April 2009), could take advantage of Maruba's entitlement to the MSC service, and in particular Maruba's slot allocation of 188 teus (2,184 tons) per vessel voyage leg including usage of up to 26 reefer plugs. This temporary suspension of Evergreen's involvement in the Slot Charter Agreement is more particularly set out in an exchange of emails between Marcelo Sibione representing Maruba and the other Lines and Adam Chen representing Evergreen between 28 October 2008 and 11 November 2008 to which we reserve our right to refer for its full terms and effect.

On 26 March 2009 we wrote to you advising you that the time to re-enter the Slot Charter Agreement was approaching and that you should make known to us the slots you were going to take up from April 2009 onwards. We estimated in that email that M/V RUPANCO 9144 had an eta in Antwerp of 14 April 2009 and called upon Evergreen to make its new nominations for the Slot Charter Agreement.

Unfortunately from March 2009 and subsequently Evergreen have refused to take up their slots and re-enter into the Slot Charter Agreement as they had agreed in November 2008. This is a breach of the terms of the Slot Charter Agreement and is continuing a breach. Maruba affirm the Slot Charter Agreement and that it continues in full effect with Evergreen

2





Emma de la Barra 353 · 3er Piso · Edificio Colonos Norte
C1107BXA Buenos Aires · Argentina

and the other Lines and insist that Evergreen comply with their contractually agreed commitments thereunder.

The losses that have been suffered as a consequence of Evergreen not taking up their slot allocation from April 2009 onwards are set out in the enclosed schedules. You will note that the sum of US$210,067.50 is due and payable to Maruba in respect of Evergreen's slot allocation during April 2009 and the sum of US$624,531.25 is due and payable in respect of Evergreen's slot allocation during May 2009 and we should be grateful if these sums are paid immediately.

You will also note from a separate schedule the amount of Evergreen's slot allocation, is to be incurred moving forward. This amounts to an addition US$5,476,954.12 bringing the total amount to US$6,001,485.37. If Evergreen pay the sum in the first schedule and agree to pay the sum in the second schedule on a continuing basis, we shall waive any right to interest on the sums in the first schedule. If Evergreen refuse to pay or do not pay the sums in the first schedule and agree to pay the sums in the second schedule moving forward Maruba shall be forced within 7 days of this notice to refer this matter to arbitration in accordance with Clause 15 of the Slot Charter Agreement. This is formal notice and is given in accordance with the terms of Clause 16 of the Slot Charter Agreement. We look forward to receiving your satisfactory reply by return, failing which after the expiry of 7 days from today's date we shall commence arbitration proceedings.

We reserve all our rights in relation to any and all amounts due under the Slot Charter Agreement including our rights to secure our claims under the Slot Charter Agreement and if no satisfactory response is forthcoming from this notice we reserve the right to take any

3



# MARUBA
## www.maruba.com.ar

Emma de la Barra 353 - 3ᵘ Piso - Edificio Colonos Norte
C1107BXA Buenos Aires - Argentina

steps we deem appropriate in that regard without further reference to yourselves.  We look

forward to receiving your urgent reply.

Yours faithfully.

Marcelo Sibione
For and on behalf of
Empresa de Navegacion Maruba SA ("MARUBA")

3



Tel.: (+54-11) 4320-3600 (Líneas Rotativas) • Fax: 4320-3795/3798/3799 • Web site: www.maruba.com.ar

*Schedule 1*

## MARUBA S.A.

EMMA DE LA BARRA 353 3rd FLOOR
PUERTO MADERO
C1107BXA BUENOS AIRES
ARGENTINA



EVERGREEN MARINE (UK) LTD
Evergreen House,
160 Euston Road, London,
United Kingdom
Post Code : NW1 2DX

Date:     April 8th, 2009

Invoice No.:     196822467

*Fot the attention of: Mr Kamran Azar*

| INVOICE | $US |
|---|---|
| **EUSA SERVICE SLING 1- 9th cycle** | |
| - 125 Teus @ 840,27 USD on CSAV RAHUE V.9116 | 105,033.75 |
| - 125 Teus @ 840,27 USD on CSAV LONQUEN V.9117 | 105,033.75 |

Bank details:
Beneficiary :    SOUTH ATLANTIC CONTAINER LINES LTD.
Account no.:    36895096
Bank name :    CITIBANK N.A. (New York)
399 PARK AVENUE 10.043
ABA code   :    021000089

| INVOICE TOTAL | $US | 210,067.50 |
|---|---|---|

### PAYMENT DUE ON DECEMBER 15TH, 2008

**MARUBA S.A.**
EMMA DE LA BARRA 353 3rd FLOOR
PUERTO MADERO
C1107BXA BUENOS AIRES
ARGENTINA



EVERGREEN MARINE (UK) LTD
Evergreen House,
160 Euston Road, London,
United Kingdom
Post Code : NW1 2DX

Date:       May 7th, 2009

Invoice No.:       196865027

*Fot the attention of: Mr Kamran Azar*

| INVOICE | $US |
|---|---|
| **EUSA SERVICE SLING 1- 10th cycle** | |
| - 125 Teus @ 908,41 USD on MARUBA CRISTINA V.9118 | 113,551.25 |
| - 125 Teus @ USD 908,41 on CSAV PANAMBY V.9119 | 113,551.25 |
| - 125 Teus @ 454,20 USD on CSAV LONCOMILLA V.9120 | 56,775.00 |
| - 125 Teus @ 908,41 USD on CSAV LOA V.9121 | 113,551.25 |
| - 125 Teus @ 908,41 USD on CSAV RAHUE V.9122 | 113,551.25 |
| - 125Teus @ 908,41 USD on CSAV LONQUEN V.9123 | 113,551.25 |

**Bank details:**
Beneficiary :    SOUTH ATLANTIC CONTAINER LINES LTD.
Account no.:    36895096
Bank name :    CITIBANK N.A.  (New York)
399 PARK AVENUE 10.043
ABA code  :    021000089

| INVOICE TOTAL      $US | 624,531.25 |
|---|---|

*PAYMENT DUE ON DECEMBER 15TH, 2008*

*Schedule 2*

| Invoice | Date | Service | Detalle | Amount | Due date |
|---|---|---|---|---|---|
| 196822467 | 39911 | EUSA 1 | 9TH INVOICING | 210067.5 | 39911 |
| 196865027 | 39940 | EUSA 1 | 10TH INVOICING | 624531.25 | 39940 |

| | | | | | |
|---|---|---|---|---|---|
| never invoiced | 39977 | EUSA 1 | 11TH INVOICING | 639245.82 | 40001.5 |
| never invoiced | 40026 | EUSA 1 | 12TH INVOICING | 792337.14 | 40050.5 |
| never invoiced | 40075 | EUSA 1 | 13TH INVOICING | 792337.14 | 40099.5 |
| never invoiced | 40124 | EUSA 1 | 14TH INVOICING | 792337.14 | 40148.5 |
| never invoiced | 40173 | EUSA 1 | 15TH INVOICING | 792337.14 | 40197.5 |
| never invoiced | 40222 | EUSA 1 | 16TH INVOICING | 792337.14 | 40246.5 |
| never invoiced | 40271 | EUSA 1 | 17TH INVOICING | 565955.1 | 40295.5 |
| TOTAL | | | | 6,001,485.37 | |